**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ANTILLES FAMILY OFFICE, LLC,<br><br>           Plaintiff,<br><br>    v.<br><br>INCEPTION MINING, INC.,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No.<br>)<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**

For its Verified Complaint against defendant Inception Mining, Inc., a Nevada corporation ("**Defendant**" or "**IMII**"), plaintiff Antilles Family Office, LLC, a U.S. Virgin Islands limited liability company ("**Plaintiff**" or "**Antilles**") alleges and states as follows:

**NATURE OF ACTION**

1.     This is a civil action for breach of a promissory note issued in exchange for a $3,000,000.00 loan on May 20, 2019. Defendant has failed to make the required loan payments, and the note is past due and payable in full. The parties agreed to a Forbearance Agreement on April 14, 2020, but Defendant has not made any payments since March 24, 2021. After giving Defendant every opportunity to perform as agreed, Plaintiff now brings this collection action.

**PARTIES, JURISDICTION AND VENUE**

2.     Plaintiff Antilles is a limited liability company organized under the laws of the U.S. Virgin Islands, with its principal place of business located in St. Thomas, U.S. Virgin Islands. All of Plaintiff's members are citizens of the U.S. Virgin Islands.

3.     Defendant IMII is a corporation organized under the laws of Nevada, with its principal place of business located in Salt Lake City, Utah.

4. This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different States, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1332(e), States include Territories.

5. Venue properly lies in this district under 28 U.S.C. § 1391(b), and this Court has personal jurisdiction over Defendant, because the agreement underlying this action, as described herein, specifies Delaware law, jurisdiction and venue.

## FACTS COMMON TO ALL CLAIMS

6. IMII is a mining company engaged in the production, acquisition, exploration, and development of precious minerals, primarily for gold, from owned mining properties. IMII is a public company that files periodic reports with the U.S. Securities & Exchange Commission (SEC). Its stock is publicly traded on the OTCQB Venture Market under the trading symbol "IMII". IMII is a penny stock, and its trading price was $0.0062 as of market close on December 23, 2021.

7. Antilles is a family office, which handles investment management with the goal of effectively growing wealth. Antilles holds the IMII promissory note pursuant to an Assignment effective as of November 24, 2021, which Defendant acknowledged and agreed to, a copy of which is attached hereto as **Exhibit A**. The Assignment provides that it "shall be governed by the law of the state of Delaware, and jurisdiction and venue for all matters connected with, arising out of or relating to this Assignment shall lie in the state of Delaware."

8. On or about May 20, 2019, Plaintiff's assignor Discover Growth Fund, LLC, a U.S. Virgin Islands limited liability company ("**Discover**") made a loan of $3,000,000.00 to IMII. A

copy of IMII's banking records showing an incoming wire received into its bank account from Discover in the amount of $3,000,000.00 on May 21, 2019 is attached hereto as **Exhibit B**.

9. IMII issued a Senior Secured Redeemable Convertible Note ("**Note**") on or about May 20, 2019, a copy of which is attached hereto as **Exhibit C**. The Note included an original issue discount (OID) and had an initial face value of $4,250,000.00. The Note was issued pursuant to a Note Purchase Agreement ("**Agreement**") dated May 20, 2019, a true copy of which is attached hereto as **Exhibit D**. The Note, Agreement and related documents are referred to herein as the "**Transaction Documents**."

10. Defendant is the maker and issuer of and primary obligor under the Note. By virtue of the Assignment, Plaintiff is the holder of the Note. Defendant is obligated to pay the Note on the 2-year Maturity Date, or upon an earlier Event of Default, as defined in the Note. Note, § I.A, § I.G.6.h, § II.G-H. As such, the Maturity Date occurred on May 20, 2021 when Defendant defaulted.

11. In addition to the principal balance, Defendant is obligated to pay interest on the Face Value of the Note in amounts calculated under the Note, with an initial Interest Rate of 10% per annum, which increases 10% per annum upon each occurrence of a Trigger Event under the Note. Note, § I.C. Like the Face Value, interest is payable, at latest, on the Maturity Date, or following an earlier Event of Default. Note, § I.C, § II.G-H.

12. A copy of the calculation of the Note balance is attached hereto as **Exhibit E**. IMII's quarterly report on Form 10-Q filed with the SEC on November 15, 2021, acknowledges the default, and that the Note balance as of the September 30, 2021 quarter end was $5,488,980. See https://www.sec.gov/ix?doc=/Archives/edgar/data/1416090/000149315221028503/form10-q.htm.

13.     The Note is secured, and provides that, "[t]o secure the Obligations [i.e., all amounts due under the Note] the Company as debtor, hereby assigns and grants to" the noteholder "as secured party, a continuing first-position lien on and security interest in, all right, title and interest of the Company, whether now owned or existing or hereafter created, acquired, or arising, in and to all of the Collateral." Note, § II.A. "**Collateral**" is defined as "all assets of the Company, including without limitation all personal property wherever located, both now owned and hereafter acquired, including, but not limited to, all equipment, fixtures, inventory, goods, documents, general intangibles, accounts, deposit accounts . . . receivables, contract rights . . . chattel paper, patents, trademarks and copyrights" and various other assets as defined in the Note. § I.G.6.b.

14.     On May 21, 2019, UCC-1 Financing Statement No. 20190117815-7 was filed with the Secretary of State of Nevada, thus perfecting the security interest in the Collateral. On December 2, 2021, UCC Financing Statement Amendment No. 2019011785-7 was filed, reflecting the Assignment of the aforesaid UCC-1 to Antilles. True copies of those documents are attached hereto collectively as **Exhibit F**.

15.     On May 21, 2019, UCC-1 Financing Statement No. 567791201944 was filed with the Division of Corporations of Utah, further perfecting the security interest in the Collateral. On December 2, 2021, UCC Financing Statement Amendment No. 567791201944 was filed reflecting the Assignment of the aforesaid UCC-1 to Antilles. True copies of the filing acknowledgement for the first of those documents, and the amendment and its filing acknowledgement are attached hereto collectively as **Exhibit G.**

16.     The Note is convertible, and provides that, at the discretion of the holder, "[a]ll or any portion of the Face Value of the Note may be converted, in part or in whole, into shares of Common Stock" of Defendant "at any time or times after the Issuance Date. . . ." Note, § I.G.1.a.

17.     July 29, 2019 and December 16, 2021, an aggregate of $543,300 of the Note was converted in a series of conversions, and Defendant delivered 93,829,876 Conversion Shares as required by the Transaction Documents, which were subsequently resold into the public markets by Plaintiff and its assignee.

18.     Section I.F.2. of the Note, entitled "Early Redemption", provides that, "[p]rior to the Maturity Date, provided that no Trigger Event has occurred, the Company will have the right at any time upon 30 Trading Days' prior written notice, in its sole and absolute discretion, to redeem all or any portion of the Note then outstanding by paying. . ." Discover "in cash by wire transfer or immediately available funds an amount (the "Early Redemption Price") equal to 140% of the then-outstanding Face Value."  Note, § I.F.2.

19.     Between April 30, 3030 and March 24, 2021, Defendant redeemed $900,000 of the Note in a series of redemption payments.

20.     Section I.H.1 of the Note provides that

[a]ny occurrence of one or more of the following, at any time and for any reason whatsoever, will constitute a "**Trigger Event**": . . .

c.  Any violation of or failure to perform any covenant or provision of this Note, the Agreement, or any Transaction Document, related to payment of cash; [or]

d.  Any violation or failure to perform any covenant or provision of this Note, the Agreement, or any Transaction Document, which in the case of a default that is curable . . . and has not occurred before, is not cured within 5 Trading Days of written notice thereof . . . .

21.     Section II.G.1 of the Note, entitled "Events of Default" provides that

> Company shall . . .[at Discover's] option, be in default under this Agreement upon the happening of any of the following events or conditions (each, an "**Event of Default**"): (a) a failure to pay any amount due unde this Note, the Agreement or any Transaction Document within 5 business days of the date the same is due; . . . (b) the failure by Company to perform any of its other obligations under this Note, the Agreement or any Transaction Document within 5 business days of notice from . . . [Discover] of the same; . . .[or] (g) the Closing Price of the Common Stock [of the Company] is below $0.05 per share for 20 Trading Days [defined as 'any day on which the Common Stock is traded on the Trading Market', i.e. OTCQB or higher market where the stock is traded] or more. . . .

22.     On January 27, 2020, the Closing Price of Defendant's Common Stock fell below $0.05 per share, and remained below that price for 20 Trading Days, so that an Event of Default occurred on February 20, 2020. Discover gave Defendant written notice of that Event of Default, and Defendant failed to cure the same within 5 Trading Days thereafter, thus causing a Trigger Event. Accordingly, the interest rate increased to 20% for the life of the Note..

23.     Discover attempted a loan workout with Defendant, to give it a chance to payoff the Note. On April 14, 2020 Discover and Defendant entered into a "Forbearance Agreement" whereby Discover rescinded and withdrew its declaration of an Event of Default and Defendant agreed to make a series of "Monthly and Quarterly Redemptions" under the redemption/repayment provisions of the Note. Forbearance Agreement, § 3-4. A true copy of the Forbearance Agreement is attached hereto as **Exhibit H**.

24. The Forbearance Agreement sets forth Defendant's acknowledgment and agreement regarding the foregoing occurrence of a Trigger Event and Event of Default in Recital D: "The Closing Price of the Common Stock has been below $0.05 per share for 20 Trading Days or more, which, at Investor's option, will constitute an Event of Default. Company failed to cure the low price within 5 Trading Days, which constitutes a Trigger Event." Forbearance Agreement, Recital D.

25. Paragraph 3 of the Forbearance Agreement further provides that the Defendant will remit the following "**Monthly and Quarterly Redemptions**":

(a) **Monthly and Quarterly Redemptions.** On the first day of each calendar month beginning May 1, 2020, Company will redeem a portion of the Note at the Early Redemption Price by paying Investor in cash by wire transfer of immediately available funds at least the following amounts:

(i) **2020 Payments.** $900,000 delivered during 2020, with $100,000 delivered during Q2 2020, with at least $50,000 per month delivered in each of May 2020 and June 2020; $300,000 delivered during Q3 2020, with at least $75,000 per month delivered in each of July, August and September 2020; $300,000 delivered during Q4 2020, with at least $100,000 per month delivered in each of October, November and December 2020;

(ii) **2021 Payments.** $2,400,000 delivered during 2021, with at least $400,000 delivered each quarter, including minimum payments of $100,000 delivered per month;

> (iii)  **2022 Payments.** $500,000 delivered during each quarter of 2022, with at least $150,000 delivered per month, until the Note is converted or redeemed in full.

Forbearance Agreement, § 3.

26. As set forth on the Spreadsheet, the Defendant made certain of these Quarterly and Monthly Redemptions, but not all of them. IMII has not made any loan payments at all since March 31, 2021. As a result, Defendant is in breach and default of the Forbearance Agreement.

27. Paragraph 4 of the Forbearance Agreement, entitled "Forbearance", provides that

> [t]he parties agree that Investor [i.e. Discover] hereby rescinds and withdraws its prior declaration of an Events of Default. For so long as Company fully and timely complies with its obligations under Paragraph 3 above, Investor will not declare an Event of Default under Section II.G(g) of the Purchase Agreement, even if the Closing Price is or remains below $0.05 per share. For the avoidance of doubt, the foregoing does not apply to and shall have no effect with regard to any Event of Default that may occur with regard to any other subsection of Section II.G of the Purchase Agreement.

Forbearance Agreement, ¶ 4. Thus, as a result in Defendant's failure to remit all of the required Quarterly and Monthly Redemptions and resulting breach of and default under the Forbearance Agreement, Discover's forbearance obligations thereunder are of no further force and effect.

28. As discussed above, the Maturity Date occurred on May 20, 2021, and all principal and interest amounts payable by Defendant under the Note became due and payable. Defendant has failed to pay all amounts due under the Note.

29.     The Transaction Documents provide that the prevailing party in an action to collect amounts due under the Transaction Documents is entitled to recover its attorneys' fees and costs of collection.

30.     Section II.H of the Note, entitled "Remedies," provides that, "[u]pon the Occurrence of any Event of Default and at any time thereafter . . ." the holder of the Note "may declare all Obligations secured hereby immediately due and payable" and to take possession of and foreclose upon the Collateral and to collect its expenses of exercising said remedies inclusive of attorneys' fees.

31.     In Defendant's Form 10-Q filed with the SEC for the period ended September 30, 2021, Defendant acknowledged, at p. f-21, that "[t]he Company is not current with all payments due according to the agreement [i.e. the Agreement]."  Accordingly, Defendant has acknowledged its breach of contract..

## COUNT ONE– BREACH OF CONTRACT

32.     Plaintiff repeats and realleges the allegations previously set forth as if repeated at length herein.

33.     Because Defendant is in default under the Note, the Agreement and the other Transaction Documents, the entire amount of the Obligations due thereunder, together with interest, costs and attorneys' fees accrued and accruing, is now due and payable.

34.     Defendant has failed and refused, and continues to fail and refuse to pay the amounts owed to Plaintiff as aforesaid.

35.     Pursuant to the Transaction Documents, as of October 28, 2021, there is due and owing from Defendant to Plaintiff a total of **$5,324,206.09**, together with accrued and accruing interest, costs and attorneys' fees.

**WHEREFORE,** Plaintiff demands judgment against Defendant for the total outstanding amount of the Obligations due pursuant to the Transaction Documents, together with interest, costs and attorneys' fees accrued and accruing, and for such other relief as the Court may deem equitable and just.

## COUNT TWO – MONEY HAD AND RECEIVED

36. Plaintiff repeats and realleges the allegations previously set forth as if repeated at length herein.

37. Plaintiff relied upon Defendant's execution of the Transaction Documents and other promises of payment in lending money to Defendant had and received by Defendant for its use and benefit.

38. Defendant has failed and refused, and continues to fail and refuse to pay the amounts owed to Plaintiff pursuant under the Transaction Documents.

39. Pursuant to the Transaction Documents, as of October 28, 2021, there is due and owing from Defendant to Plaintiff the amount of **$5,324,206.09**, together with accrued and accruing interest, costs and attorneys' fees.

**WHEREFORE,** Plaintiff demands judgment against Defendant for the total outstanding amount of the Obligations due pursuant to the Transaction Documents, together with interest, costs and attorneys' fees accrued and accruing, and for such other relief as the Court may deem equitable and just.

## COUNT THREE– UNJUST ENRICHMENT

40. Plaintiff repeats and realleges the allegations previously set forth as if repeated at length herein.

41. By virtue of its continued failure and refusal to pay Plaintiff the amounts due and owing under the Transaction Documents as aforesaid, Defendant has been unjustly enriched in the sum equal to the total outstanding amount of the Obligations due pursuant to the Transaction Documents together with accrued and accruing interest, costs and attorneys' fees.

42. Plaintiff has been damaged by Defendant's failure and refusal to pay amounts due and owing under the Transaction Documents and its consequent unjust enrichment.

**WHEREFORE,** Plaintiff demands judgment against Defendant for the total outstanding amount of the Obligations due pursuant to the Transaction Documents, together with interest, costs and attorneys' fees accrued and accruing, and for such other relief as the Court may deem equitable and just.

### COUNT FOUR – INJUNCTIVE RELIEF PRESERVING COLLATERAL

43. Plaintiff repeats and realleges the allegations previously set forth as if repeated at length herein.

44. Defendant is in default under the terms of the Transaction Documents.

45. There exists a substantial probability, therefore, that final judgment will be rendered in favor of Plaintiff on its claims.

46. Without prejudice to and specifically reserving all rights to (i) contest Defendant's valuation of the Collateral and/or (ii) prove the value of the Collateral to be greater than, equal to or less than Defendant's Obligations to Plaintiff in this or any other judicial or administrative proceeding, Plaintiff states that it fears that the liquidation value of the Collateral may be less than the total amount of the Obligations secured by the Collateral. Plaintiff is entitled to inspect and appraise the Collateral pursuant to its rights under the security interest granted pursuant to the Credit Application, and reserves its rights to amend the allegations set forth herein.

47.     Reserving its rights as aforesaid, Plaintiff states, upon information and belief, that there is insufficient Collateral to satisfy Defendant's Obligations under the Transaction Documents.  Irrespective of the value of the Collateral, the same may be, upon information and belief, the only source of recovery to Plaintiff on its claims against Defendant.

48.     If Defendant takes any action that diminishes the value of the Collateral, or to convey, commingle, transfer, alienate, encumber or otherwise dispose of the Collateral which would otherwise be available to satisfy a judgment in favor of Plaintiff, Plaintiff would be irreparably harmed because, upon information and belief, Defendant does not have sufficient other assets to satisfy a money judgment.

49.     In order to protect Plaintiff against the conveyance, commingling, transfer, alienation, encumbering or other disposition of Defendant's assets constituting the Collateral pending a hearing on Plaintiff's application for replevin and pending final judgment, Plaintiff is entitled to a temporary restraining order and an interlocutory and permanent injunction.

**WHEREFORE,** Plaintiff demands judgment against Defendant, whereby Defendant, its principals, employees, agents, subsidiaries, affiliates, and anyone acting in concert with them, are temporarily restrained and for an interlocutory and permanent injunction as follows:

(a)     Prohibiting Defendant, it principals, employees, agents, and anyone acting in concert with them, from conveying, commingling, transferring, alienating, encumbering, or otherwise disposing of any of the Collateral without Plaintiff's prior consent;

(b)     Requiring that Defendant, its principals, employees, agents and anyone acting in concert with them, provide Plaintiff with an accounting of all Collateral;

(c)     Requiring that Defendant, its principals, employees, agents and anyone acting in concert with them, provide Plaintiff with a complete current list of all names, addresses,

and telephone numbers with the amount owed, of all persons and entities of whom they have any knowledge may be indebted to Defendant and requiring Defendant, its principals, employees, agents and anyone acting in concert with them, to notify said persons and entities that all such indebtedness is assigned to and payable only to Plaintiff;

(d) Requiring that Defendant, its principals, employees, agents and anyone acting in concert with them, place in escrow at Plaintiff any proceeds received with respect to the Collateral including, but not limited to, proceeds received from account debtors with respect to accounts receivable;

(e) Directing that Defendant, its principals, employees, agents and anyone acting in concert with them, provide Plaintiff with immediate access to Defendant's facilities, and to all of Defendant's books and records for the purpose of inspection and/or copying; and to the Collateral for purposes of inspecting and appraising the same;

(f) For such other relief as the Court may deem just and equitable.

## COUNT FIVE - REPLEVIN

50. Plaintiff repeats and realleges the allegations previously set forth as if repeated at length herein.

51. Plaintiff has notified Defendant of its defaults and has demanded payment of all sums due under the Transaction Documents.

52. Said demand has been refused.

53. Pursuant to the Delaware Uniform Commercial Code and Title 10 Del. C. § 9631, et. seq., Plaintiff is entitled to immediate replevin and possession of the Collateral.

**WHEREFORE,** Plaintiff demands judgment against Defendant:

(a) For immediate possession of the Collateral;

      (b)      For the entry of an order authorizing the issuance of a Writ of Replevin directing the Sheriff of any County in which the Collateral may be found, to seize the Collateral and deliver same to Plaintiff;

      (c)      Requiring that Defendant, its principals, employees, agents and anyone acting in concert with them, provide Plaintiff with an accounting of all Collateral;

      (d)      Requiring that Defendant, its principals, employees, agents and anyone acting in concert with them, provide Plaintiff with a complete current list of all names, addresses, and telephone numbers with the amount owed, of all persons and entities of whom they have any knowledge may be indebted to Defendant and requiring Defendant, its principals, employees, agents and anyone acting in concert with them, to notify said persons and entities that all such indebtedness is assigned to and payable only to Plaintiff;

      (e)      Requiring that Defendant, its principals, employees, agents and anyone acting in concert with them, place in escrow at Plaintiff any proceeds received with respect to the Collateral including, but not limited to, proceeds received from account debtors with respect to accounts receivable;

      (f)      Directing that Defendant, its principals, employees, agents and anyone acting in concert with them, provide Plaintiff with immediate access to Defendant's facilities, and to all of Defendant's books and records for the purpose of inspection and/or copying;

      (g)      For all fees and charges due under the agreements between Plaintiff and Defendant including, but not limited to, costs and attorneys' fees; and

      (h)      For such other relief as the Court may deem just and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby demands judgment against the Defendants, jointly and severally, as follows:

(a) The entry of judgment in the full amount of the Obligations;

(b) An award of attorneys' fees, pre- and post-judgment interest, expenses, and court costs as provided by law;

(c) The entry of an Order awarding appropriate injunctive relief to preserve the Collateral and a further Order directing the issuance of appropriate Writ(s) of Replevin of the Collateral;

and

(d) For such other and further legal and equitable relief as the Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

GIBBONS P.C.

*/s/ Christopher Viceconte*
Christopher Viceconte (No. 5568)
300 Delaware Avenue, Suite 1015
Wilmington, DE 19801
Tel: (302) 518-6322
Fax: (302) 397-2050
cviceconte@gibbonslaw.com

*Attorneys for Plaintiff*

Dated: December 27, 2021

## **VERIFICATION**

John Kirkland, of full age, hereby verifies as follows:

1. I am the Fund Manager of the Member of plaintiff Antilles Family Office, LLC.

2. I have read the foregoing Verified Complaint, and verify that the factual statements made therein are true.

3. I am aware that should any of the foregoing be willfully false I am subject to punishment

*/s/ John Kirkland*
John Kirkland

Dated:  December 27, 2021